IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Cheryl Clevenger, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:02-CV-558 |
| vs. | ) |
| | ) |
| Dillards, Inc., *et al.*, | ) |
| | ) |
| Defendants. | ) |

Memorandum and Order

Plaintiff Clevenger initiated this action, ostensibly on behalf of herself and similarly situated others, on July 29, 2002. On December 13, 2004, she filed a second amended complaint in which she asserts eight claims against the Defendants, Dillards, Inc. ("Dillards"); Mercantile Stores Pension Plan (the "Plan"); and Mercantile Stores Pension Committee (the "Committee"). On May 25, 2005, Defendants filed their second amended third-party complaint against Towers, Perrin, Forster & Crosby, Inc. ("Towers"). This matter is now before the Court upon Defendants' partial motion to dismiss the second amended complaint (Doc. 24), Defendants' motion for judgment on the pleadings with respect to Counts VI and VIII of Plaintiff's second amended complaint (Doc. 82), and Towers' motion to dismiss the third-party complaint (Doc. 83).

A.  <u>Background</u>

Plaintiff Clevenger was a longtime employee of Mercantile Stores when, in 1998, Dillards purchased Mercantile Stores.  Plaintiff alleges that she had accrued substantial benefits under the Plan at that time.

On September 29, 1998, Dillards announced its intention to terminate the Plan.  On November 24, 1998, the Plan administrator filed a Standard Termination Notice with the Pension Benefits Guarantee Corporation ("PBGC").  Thereafter, participants in the Plan were afforded the opportunity to take their benefits in various forms, including as a lump sum, which is how Plaintiff took her benefits.

Plaintiff's claims are based, in large measure, upon the manner in which lump sum benefits were calculated under the Plan and late amendments to the Plan that affected those calculations.  She notes that, in August 1998, the Plan was amended to add a "Shut-Down Benefit" and a "Window Benefit" and to provide that participants could elect to receive either of those benefits, as well as the regular accrued benefit, as a lump sum or as an immediate annuity.  The Plan provided, with respect to the lump sum optional forms of payment for the regular accrued benefit, that the election to commence the payment of a benefit as a lump sum would be effective as of any annuity starting date "which will be the first date of a calendar month following the associate's termination date as selected by the associate."  The payment of the regular accrued benefit in the form

2

of a lump sum was required to commence within 120 days after the date of termination of the participant's employment.

That amendment followed a 1996 amendment adopting the annual interest rate on 30-year Treasury securities (the "GATT rate") for the October preceding the plan year in which an annuity is started to compute lump sum distributions from the Plan, other than distributions made in the context of a termination of the Plan.  That rate replaced the PBGC interest rate structure as of the date of the start of the annuity.

In November 1998, the Plan was again amended.  Prior to that amendment, the Plan required that all lump sum distributions made in the context of a Plan termination be the actuarial equivalent of the participant's accrued benefit.  The actuarial equivalent was to be determined using an interest rate of 5.5%.  The amendment, effective November 28, 1998, provided that lump sum distributions made in the context of a Plan termination would be computed in accordance with the provisions of 9.11 of the Plan.  In other words, the applicable interest rate would be the GATT rate for the October preceding the plan year in which the annuity starting date would occur.

Plaintiff Clevenger alleges that she was issued a lump sum distribution of her regular accrued Plan benefits on March 9, 1999.  She alleges that that distribution, as well as the distributions to all members of the class of persons she purports to represent, occurred in the context of the termination of the Plan in the 1999 plan year.  She alleges, on that basis, that the distributions should have been calculated using either a 5.5% interest rate or, alternatively, the GATT rate for October 1998, whichever provided the

larger lump sum. She observes that the GATT rate for October 1998 was 5.01%. Plaintiff alleges that Dillards and the Plan utilized a fictional annuity starting date of January 23, 1999, which was part of the 1998 plan year according to the provisions of the Plan, in order to apply the GATT rate of October 1997, which was 6.33%.

Plaintiff alleges that the result of that action by Dillards and the Plan was that lump sum distributions were reduced and the reversion to Dillards, authorized by the Committee in January 2000, was inflated. Plaintiff notes that the amendments to the Plan upon which Defendants based the calculations resulting in a reduction of benefits paid to the participants and an inflation of the reversion to Dillards were adopted within the five calendar years prior to the termination of the Plan.

Plaintiff further alleges that prior to August 1998, the Plan did not provide for the payment of pension benefits beyond the regular accrued benefits upon termination of a participant's employment. Rather, Mercantile Stores maintained a severance plan that provided participants whose employment was terminated with a non-pension benefit payable from Mercantile Stores' general funds. That benefit was equal to one week's pay for every six months of completed service.

Plaintiff alleges that Dillards amended the Plan in August 1998 to provide participants with an additional pension benefit payable from the Plan, rather than from its general funds. That benefit was calculated in the same manner as severance benefits had been calculated prior to August 1998. Plaintiff alleges, however, that, instead of explaining how the benefits were calculated, Dillards simply attached to Appendix E to

4

the Plan a list of eligible participants together with the dollar amounts of the benefits to which they were entitled, stated in the form of an annuity payable at age 65.

Plaintiff alleges that, during the administration process at the termination of the Plan, the Committee refused to explain how the benefits, called Shut-Down Benefits, were calculated or the extent to which the benefit was dependent upon the age of the employee.  Plaintiff alleges that the amount of the Shut-Down benefit afforded to any given employee was smaller than the same benefit afforded to an otherwise identical younger employee.

On the basis of those allegations, Plaintiff asserts eight claims.  Count I is a claim pursuant to 29 U.S.C. § 1132(a)(1)(B) to recover additional benefits under the Plan.  Plaintiff does not, in the allegations specific to Count I, identify the basis for her claim that she is entitled to additional benefits.  Count II is a claim pursuant to 29 U.S.C. § 1341 that Defendants violated 29 U.S.C. § 1344 by permitting Dillards to take a reversion under the Plan that was made larger by virtue of Plan amendments adopted within the five years prior to the termination of the Plan.  Plaintiff alleges that she and other Plan participants were "adversely affected" by that alleged violation, but she does not identify their injury in light of the fact that the reversion occurred after the payment of benefits.  Her most specific allegation in that regard is that "the Plan administrator should not have treated these amendments [which increased the amount of the reversion distributed to Dillards] as effective when determining the amount of plan assets to distribute to Dillards."  Second amended complaint, ¶¶ 55, 56.

5

Count III is a claim that Defendants violated 29 U.S.C. § 1106(a)(1)(D) by permitting the transfer of funds, in the form of the reversion, to Dillards, an employer and a party in interest of the Plan.  Plaintiff apparently seeks relief in the form of a return of the reversion to the Plan for distribution to participants.  Count IV is a claim for breach of fiduciary duty against Dillards and the Committee pursuant to 29 U.S.C. § 1104(a).  Plaintiff alleges that Dillards and the Committee breached their fiduciary duties by making the distribution to Dillards of the portion of the reversion resulting from amendments to the Plan within the five calendar years preceding the termination of the Plan.

Count V is  a claim that Defendants violated 29 U.S.C. § 1055(g)(3) by causing the calculation of present value of the benefits to which Plan participants were entitled to be determined using a fictional annuity starting date for the purpose of decreasing the amount of the benefit.  Count VI is a claim against Dillards and the Plan for violation of 29 U.S.C. § 1054(b)(1)(H), which prohibits a reduction in a participant's rate of benefit accrual on the basis of age.

Count VII is a claim against Dillards and the Plan for violation of 29 U.S.C. § 1054(g).  Plaintiff alleges that the November 28, 1998, amendment to the Plan changing the definition of the annuity starting date impermissibly reduced the amounts of the Plan participants' accrued benefits paid in the form of lump sum distributions.  Count VIII is a claim against Dillards and the Committee for violation of 29 U.S.C. § 1104 by failing to disclose to Plan participants that, pursuant to the August 12, 1998, amendment to the

6

Plan, they could defer receipt of their lump sum distribution for up to 120 days from the date of the termination of their employment and, thus, insure the use of the October 1998 GATT rate of 5.01% to calculate their lump sum distributions.  All of the statutes upon which Plaintiff bases her claims are provisions of the Employee Retirement Income Security Act ("ERISA").

        In their second amended third-party complaint against Towers, Defendants allege that the Committee and the Plan contracted with Towers to provide services to Defendants.  They allege that, during the contracting process, Towers represented to Defendants that it would use a proprietary program that would allow it to calculate annuities and lump sum distributions efficiently.  Defendants further allege that the parties to the alleged contract understood that certain deadlines would apply, including January 23, 1999, for the distribution of all benefits.  Defendants allege that Towers misrepresented on several occasions that it would meet that deadline.  Defendants paid Towers $1.9 million between 1998 and 2001 for services relating to the termination of the Plan.

        Defendants allege that Towers assumed the following contractual duties with respect to the termination of the Plan:  calculating benefits in accordance with the terms of the Plan; sending accurate and complete communications, benefit notices and election forms to the participants in the Plan; communicating accurately and completely with Defendants, Plan participants, and government agencies; advising Defendants regarding compliance with the Plan and ERISA; and adhering to the schedule to which

the parties had agreed for the termination of the Plan.  Defendants allege that "Towers exercised substantial discretion as to the management of the Plan's assets, particularly in the payment of lump sum distributions."  Second amended third-party complaint, ¶ 19. Defendants allege that, in spite of Towers' repeated assurances that lump sum distributions would be made by January 23, 1999, the first such distributions were not made until February 8, 1999, which was in the 1999 Plan year.

Defendants further allege that Towers failed in its duty to provide notice and distribution forms to 1,871 Plan participants who were eligible, as a result of the August 12, 1998, amendment to the Plan, for a lump sum benefit option for their Plan benefit other than their Shut-Down Benefit.  Defendants allege that that failure on the part of Towers gave rise to Plaintiff's claim that the 5.01% GATT rate should have been applied to the distributions.  Had the distribution forms been timely mailed, Defendants allege, the distributions would have been made on or before January 23, 1999, and the only arguably applicable GATT rate would have been 6.33%.  On that basis, Defendants allege that Towers is liable to the Plan and Dillards "for any increase in the lump sum distributions that are determined to be payable at a 5.01% rate (rather than 6.33% rate) to the 1,812 participants eligible for a lump sum distribution option for their Plan benefit other than their Shut-Down Benefit under the August 12, 1998 Plan amendment." Second amended third-party complaint, ¶ 32.

Defendants allege that, as part of its contract with them, Towers was responsible for

> working with Defendants to prepare the IRS notification to interested
> parties, . . . prepare and file the Form 5310, estimating accrued benefits,
> preparing a notice of plan benefits, distributing to Plan participants the
> notice of plan benefits, working with Defendants to complete and file
> PBGC Form 500, calculating lump sum distributions for participants in the
> Plan, determining the amounts to be paid as annuities, preparing and
> distributing election forms to Plan participants in accordance with the Plan,
> arranging for lump sum distributions to be made from the Plan to
> participants who elected to take a lump sum distribution rather than an
> annuity, communicating with the Plan's trustee to arrange for the physical
> distribution of lump sums to participants or their designees, including
> Clevenger, arranging (with Citibank) for the purchase of the annuities for
> the Plan participants who elected or defaulted to annuities, arranging (with
> Citibank) for final distribution of Plan assets, communicating with Plan
> participants, and communicating and filing forms with government agencies
> (including the PBGC and the IRS).

Second amended third-party complaint, ¶ 37.  Defendants allege that Towers failed in

those duties by failing to ensure that lump sum distributions were made by January 23,

1999.  They allege that Towers is liable to them

> for any sums paid by them to Plaintiff (or the putative class that she
> purports to represent) as a result of Towers's failure to make payment of the
> lump sum distributions before January 31, 1999 or due to the failure to
> provide election forms in accordance with the Plan document to Plan
> participants entitled to a Shut-Down Benefit who were also eligible for a
> lump sum distribution option for their Plan benefit other than their Shut-
> Down benefit.

Second amended third-party complaint, ¶ 41.  Defendants also allege that Towers

performed its duties under the contract negligently and in deviation from the standards of

professional conduct applicable to actuaries.

Defendants also contend that Towers used a 5.01% interest rate to calculate the lump sum benefits for some 400 participants who received their election forms on January 8, 1999, and then concealed that fact from Defendants and the PBGC. Defendants allege that they overpaid those participants in the approximate amount of $500,000 as a result of Towers' use of the lower GATT rate. They allege that Towers is liable to them in that amount because "Dillard's lacks the ability to recoup the overpaid benefits from the recipients who were unjustly enriched." Second amended third-party complaint, ¶ 56.

On the basis of those allegations, among others, Defendants assert six claims against Towers. The first such claim is for indemnification under ERISA and common law for the additional benefits for which they may become liable as a result of Towers' alleged

> failure to cause the lump sum distributions to be made prior to January 31, 1999 or as a result of Towers's failure to timely provide lump sum election forms in accordance with the Plan to those Plan participants entitled to receive Shut-Down Benefits who were also eligible for a lump sum distribution option for their Plan benefit other than their Shut-Down Benefit.

Second amended third-party complaint, ¶ 69.

Defendants' other claims relate to the alleged overpayment of $500,000 to certain Plan participants and injury or damages Defendants may suffer in the event that Plaintiff establishes their liability for additional benefits with respect to certain of her

10

claims .  Those claims are not indemnification claims but direct claims against Towers for breach of contract, negligence, malpractice or professional misconduct, negligent misrepresentation, and fraud.  Towers seeks the dismissal, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, of each of the claims in the second amended third-party complaint.

### B.  The Applicable Standards

The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true.  See Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993)(citing Nishiyama v. Dickson County, 814 F.2d 277, 279 (6th Cir. 1987)).  To that end, for purposes of a motion to dismiss under the Rule, the complaint must be construed in the light most favorable to the nonmoving party and its allegations taken as true.  See Scheuer v. Rhodes, 416 U.S. 232 (1974); Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995).  To survive a motion to dismiss under Rule 12(b)(6), "a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."  Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)(citations and internal quotation marks omitted).  The test for dismissal under Rule 12(b)(6), however, is a stringent one.  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Hartford

11

<u>Fire Insurance Co. v. California</u>, 509 U.S. 764, 811 (1993)(quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  <u>See also</u> <u>Monette v. Electronic Data Systems Corp.</u>, 90 F.3d 1173, 1189 (6th Cir. 1996).  Consequently, a complaint will not be dismissed pursuant to Rule 12(b)(6) unless no law supports the claim made, the facts alleged are insufficient to state a claim, or an insurmountable bar appears on the face of the complaint.

In a case such as this in which the 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, the Court applies the standard for a Rule 12(b)(6) motion in considering whether the moving party is entitled to judgment on the basis asserted.  <u>See</u>, <u>e.g.</u>, <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 11 (6th Cir. 1987).  Accordingly, the Court applies the Rule 12(b)(6) standard in its consideration of the pending motions.

C.  <u>Analysis</u>

1.  The motion for judgment on the pleadings

Defendants Dillards and the Committee argue that they are entitled to judgment on the pleadings with respect to Counts VI and VIII of the second amended complaint in this matter.  As the Court has noted, Count VI is a claim against Dillards and the Plan for violation of 29 U.S.C. § 1054(b)(1)(H), which prohibits a reduction in a participant's rate of benefit accrual on the basis of age.  Count VIII is a claim that Dillards and the Committee violated 29 U.S.C. § 1104 by failing to disclose to Plan

participants that, pursuant to the August 12, 1998, amendment to the Plan, they could defer receipt of their lump sum distributions for up to 120 days from the date of the termination of their employment and, thus, insure the use of the October 1998 GATT rate of 5.01% to calculate their lump sum distributions.  Dillards and the Committee contend that they are entitled to judgment with respect to these claims because  they are claims for additional benefits, which Plaintiff may only properly assert against the Plan.  The Plan does not seek judgment on the pleadings with respect to either Count VI or Count VIII.

The Committee is not named as a defendant in Count VI.  Its motion for judgment on the pleadings with respect to that claim is, therefore, moot.

In opposition to the motion for judgment on the pleadings, Plaintiff "clarifies" that Count VIII is not a claim for additional benefits under 29 U.S.C. § 1132, as Dillards and the Committee asserted as their sole basis for judgment, but rather a claim for breach of fiduciary duty.  The Court observes, however, that Plaintiff has clearly requested equitable relief in connection with Count VIII.  She has not cited the ERISA provision governing claims for breach of fiduciary duty, 29 U.S.C. § 1109, in connection with that claim.  The clarification confuses the claim.  For present purposes, the Court considers the claim to be one for equitable relief, in the form of a return of the reversion to the Plan, against Dillards and the Committee.  It is, therefore, similar in terms of the relief sought against Dillards, to Count VI.

Plaintiff seeks legal and equitable relief under 29 U.S.C. § 1132(a)(3) and (a)(1)(B) for the alleged violation of 29 U.S.C. § 1054(b)(1)(H) underlying Count VI.

13

While Plaintiff has not explicitly argued so, she is clearly seeking the return of the reversion by Dillards to the Plan in order to place the Plan in the financial position to provide the additional benefits to which she and other participants may be entitled. Dillards does not deny that such relief would be equitable in nature and does not dispute Plaintiff's characterization of her references to 29 U.S.C. § 1132(a)(3) in Counts VI and VIII of the second amended complaint as requests for equitable relief. Moreover, Dillards does not argue that such relief, in the form of a disgorgement, is unavailable under ERISA. The Court is persuaded that Dillards' motion for judgment on the pleadings with respect to Counts VI and VIII and the Committee's motion with respect to Count VIII of the second amended complaint (Doc. 82) is not well-taken, and the motion is hereby **DENIED**.

2.  Defendants' partial motion to dismiss

Defendants raise a host of arguments in support of their motion for partial dismissal. Plaintiff's claims are addressed in a piecemeal fashion with scant reference to the allegations overarching all of Plaintiff's claims.

Plaintiff alleges, among other things, that Defendants calculated lump sum distributions on the basis of amendments to the Plan that were unlawful or ineffective, then terminated the Plan, leaving it without resources to pay additional benefits to which participants may be entitled under the Plan without the allegedly unlawful or ineffective amendments. Plaintiff asserts various claims for additional benefits against the Plan.

14

Defendants characterize those claims as claims for money damages against all Defendants.  Were they claims for money damages against Dillards and the Committee, as opposed to claims for additional benefits against the Plan, many of Defendants' arguments would have merit.  As claims for additional benefits against the Plan, the claims are well within the plain meaning of the statutes upon which they are based.

Plaintiff's claims for additional benefits would be utterly futile were she unable to seek equitable relief in the form of disgorgement of the reversion, or a portion thereof, to the Plan.  The Plan is penniless.  Relief, in the form of additional benefits from the Plan, would be hollow.  Accordingly, Plaintiff also seeks equitable relief in the form of the return of the reversion, or a portion thereof, to the Plan.  Such relief is neither monetary damages nor declaratory relief, as Defendants have argued.  Defendants' arguments that ERISA does not afford Plaintiff either of those forms of relief are beside the point.  The Court recognizes that Plaintiff's claims are not as skillfully drafted as, perhaps, was possible.  To the Court, nevertheless, it is clear that Plaintiff seeks relief under 29 U.S.C. § 1132(a)(3) in the form of injunctions requiring the Committee and Dillards to take any actions necessary to return to the Plan the portion of the reversion that equals the amount of additional benefits to which Plaintiff would be entitled in the event that she succeeds in establishing that she is entitled to additional benefits from the Plan.  None of Defendants' arguments in support of their motion for partial dismissal challenges Plaintiff's ability to seek relief in those forms under ERISA.  Neither have Defendants established that Plaintiff is precluded from seeking relief in various forms

15

from the various Defendants in the context of the same claim.  In other words, her claims are not tainted by impermissible alternative pleading, as Defendants assert.  Rather, Plaintiff asserts claims against more than one defendant and seeks relief in different forms from each in order to obtain efficacious relief when all elements of relief are combined.

The Court does not mean to intimate that such holistic pleading is permissible under ERISA or that such holistic relief is available, but only that Defendants have not challenged the form of pleading for what it is in their motion for partial dismissal.  The Court observes that Defendants have argued that Plaintiff "can obtain all the relief she seeks in a suit for benefits under [29 U.S.C. § 1132(a)(1)(B)]."  Reply memorandum in support of motion for partial dismissal, p.11.  An award of additional benefits from a defunct Plan would, however, afford Plaintiff no relief.  An award of additional benefits combined with the injunctive relief she seeks from Dillards and the Committee would afford her the relief she seeks.  Defendants have not moved for dismissal on the basis of the legal unavailability of such combined relief from multiple defendants.  They have argued that some of Plaintiff's claims duplicate others, but they have not established that an ERISA plaintiff may not assert multiple, intertwined claims in order to obtain all of the relief necessary and available under ERISA to address the harm suffered as a result of the alleged violations.  Accordingly, their motion for partial dismissal (Doc. 24) is not well-taken, and the motion is hereby **DENIED**.

3.  Third-Party Defendant's motion to dismiss

As the Court has noted, Defendants assert six claims against Third-Party Defendant Towers.  In support of its motion to dismiss the third-party complaint, Towers limits its arguments to three general themes: (1) Defendants have failed to identify any compensable harm they will suffer in the event that Plaintiff obtains the relief she seeks; (2) Defendants may not seek indemnification from Towers, an ERISA non-fiduciary; and (3) Defendants improperly assert their state law breach of contract and tort claims as Rule 14 impleader claims in order to avoid a ripeness challenge to those claims.

The first argument is not meritorious.  Defendants have pleaded, with sufficient clarity for purposes of the present motion, that, in the event that Plaintiff is successful in prosecuting Count V of the second amended complaint, Defendant Dillards may be required to return a portion of the reversion to the Plan, thus suffering harm. Defendants contend that such harm would be compensable against Towers in the event that Plaintiff is entitled to additional benefits as a result of Towers' failure to ensure that she received her lump sum distribution on or before January 31, 1999.  Defendants contend that Towers is liable to Dillards in the amount of such additional benefits. Towers characterizes the additional benefits as a disgorgement, but that characterization does not address the possibility, alleged by Defendants, that the amount of any such disgorgement is greater because of Towers' alleged failure of timeliness.

Towers also argues that the Court may determine, as a matter of law, that Plaintiff is not entitled to additional benefits as a result of the failure to pay her lump sum distribution on or before January 31, 1999.  Towers contends that the Plan defined the annuity starting date as January 23, 1999, and that, as a result, the actual date of distribution is immaterial in light of  29 C.F.R. § 4041.28.

Towers' argument in that regard is incomplete.  Towers ignores the fact that the establishment of January 23, 1999, as the annuity starting date was part of the November 1998 amendment to the Plan that Plaintiff challenges as unlawful or ineffective.  Towers does not urge the Court to determine the merits of that challenge as a matter of law, and if Plaintiff succeeds in establishing that the amendment was unlawful or ineffective, Towers and the Defendants will be precluded from asserting that January 23, 1999, is the annuity starting date.

Towers also contends that Defendants are precluded from seeking indemnification from Towers because it is not a fiduciary for ERISA purposes.  In Harris Trust & Savings Bank v. Salomon Smith Barney Inc., 530 U.S. 238 (2000), the Supreme Court recognized that an ERISA fiduciary may bring suit, in certain circumstances, against a non-fiduciary for liability under 29 U.S.C. § 1132(a)(3).  The relief available under § 1132(a)(3) is, of course, equitable relief and not monetary indemnification. While equitable relief may include restitution of funds to which another party is legally entitled in accordance with trust principles, Defendants do not allege that Towers possesses funds that may rightfully belong to the Plan or its participants.  Accordingly,

18

<u>Harris Trust</u> does not establish Defendants' ability to assert a claim for monetary indemnification against Towers.

The question remains whether <u>Harris Trust</u>, or other applicable law, precludes such a claim: is indemnification ever available to a fiduciary against a non-fiduciary under ERISA? The <u>Harris Trust</u> court was careful to limit the relief available to a fiduciary from a non-fiduciary in a private cause of action to the equitable relief contemplated by 29 U.S.C. § 1132(a)(3). The relief Defendants seek from Towers is not within that limited category of relief. In response to Towers' motion to dismiss, Defendants raise two arguments against dismissal of their indemnification claim. First, they argue that Towers acted as a fiduciary with respect to the Plan. They next argue that federal common law supplements ERISA and permits them to assert a claim for indemnification against a non-fiduciary. The Court considers the second argument first.

Defendants observe that at least one federal district court has found "that the federal common law that supplements ERISA permits a fiduciary to seek contribution from a knowing participant in the fiduciary's breach." <u>Daniels v. Bursey</u>, 329 F.Supp.2d 975, 981 (N.D. Ill. 2004). Assuming this Court were to agree with the conclusion of the <u>Daniels</u> court, Defendants would, nevertheless, be required to demonstrate that they had pleaded that Towers knowingly participated in a breach of fiduciary duty as alleged in one of the three counts of Plaintiff's second amended complaint as to which Defendants seek indemnification: Counts V, VII, and VIII.

19

The Court observes that Defendants have alleged Towers' participation in two of the violations alleged in Counts V, VII, and VIII of the second amended complaint.  In Count V, Plaintiff alleges that Defendants used a fictitious annuity starting date to calculate lump sum distributions.  In Count VIII, she alleges that Defendants failed to notify certain Plan participants of their right to defer receipt of certain distributions in order to ensure the use of the October 1998 GATT rate.

Defendants allege that Towers participated in Defendants' alleged failure to make lump sum distributions on or before January 31, 1999, which would have ensured that the use of the October 1997 GATT rate would have been unassailable by Plaintiff. While they have alleged Defendants' participation, however, Defendants have not alleged that Towers' participation in the alleged violation was knowing.  Defendants had amended the Plan in November 1998 to establish January 23, 1999, as the annuity starting date.  They have not alleged that Towers knew that amendment to be ineffective or unlawful, as Plaintiff allege it to have been.  Accordingly, they have not alleged that Towers knew that any delay in the distribution of benefits beyond January 31, 1999, might lead to liability on the part of Defendants under 29 U.S.C. § 1132(a)(1)(B) and (a)(3).

As regards notification of certain Plan participants of their ability to choose an annuity starting date as required by the August 12, 1998, amendment to the Plan, Defendants allege that Towers failed to send the appropriate distribution forms within 30 days of the employees' severance dates, as required by the Plan as amended.  See Second

20

amended third-party complaint, ¶ 28.  They further allege that they may have been

harmed by Towers' failure.  See id., ¶¶ 30, 32.  They allege that Towers was "primarily

and actively responsible for the failure to send" the forms in accordance with the Plan.

Id., ¶ 31.  They do not allege that Towers knew that its failure could, or would, be a

violation of ERISA or that it knew that the Plan, as amended, required that the forms be

sent within a specified time period.  While they allege that Towers was contractually

obligated to meet certain deadlines, they do not imply that Towers knew that some or all

of those deadlines were prescribed by application of ERISA.  The closest Defendants

come to such an allegation is paragraph 40 of the second amended third-party complaint

in which they allege that

> Towers also was responsible for ensuring that those persons entitled to a
> 'Shut Down Benefit' under the terms of the Plan who were also eligible for
> a lump sum distribution option for their Plan benefit other than their Shut-
> Down benefit would be provided those benefits in accordance with the
> terms of the Plan.

That claim falls short of an allegation that Towers knew that the failure to send the

pertinent forms within 30 days of the effected employees' severance was itself in

contravention of the terms of the Plan.  The Court concludes, therefore, that Defendants

have failed to allege that Towers was a knowing participant in any of the breaches of

fiduciary duty alleged by Plaintiff in Counts V, VII, and VIII of the second amended

complaint.

As the Court has observed, Defendants also contend that Towers is an ERISA fiduciary.  A party is defined as a fiduciary with respect to a plan only to the extent that

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  Defendants allege that "Towers exercised substantial discretion as to the management of the Plan's assets, particularly in the payment of lump sum distributions."  Second amended third-party complaint, ¶ 19.  They have, therefore, alleged that Towers acted as a fiduciary, and the Court must accept the allegation as true for purposes of a motion to dismiss.  See Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 241 (2nd Cir. 2002).  The Court is, therefore, not persuaded that Defendants have failed to state a claim for indemnification or contribution against Towers to the extent that the claim is based upon the allegation that Towers acted as a fiduciary with respect to the Plan.

Defendants have asserted five state law causes of action against Towers. Defendants seek damages from Towers to the extent that they are held liable to Plaintiff as a result of any of the alleged actions of Towers.  Towers moves for the dismissal of those claims on various grounds.  Primarily, Towers contends that the state law claims are

22

improper under Rule 14 of the Federal Rules of Civil Procedure. That contention is, apparently, based upon Towers' assertion, already rejected by the Court, that Defendants Dillards, the Committee, and the Plan have not stated an indemnification or contribution claim upon which relief may be granted.

Defendants have asserted a claim for indemnification that satisfies the requirements of Rule 14(a), however. Accordingly, they may properly join "as many claims, legal, equitable, or maritime, as [they] have against [Towers]." Fed. R. Civ. P. 18(a). Towers also contends that the state law claims are preempted by ERISA, are barred by the applicable statutes of limitations, are not ripe, and that Defendants have failed to state claims under Ohio law upon which relief may be granted.

As a general rule, "ERISA preempts state law and state law claims that 'relate to' any employee benefit plan as that term is defined therein." Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1275 (6th Cir. 1991) (citing Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41 (1987)). Congress' intent in enacting ERISA was to completely preempt the area of employee benefit plans and to make regulation of benefit plans solely a federal concern. Pilot Life, 481 U.S. at 41. Against that backdrop, Defendants contend that their state law claims are not subject to preemption.

Defendants argue against preemption chiefly on the basis of Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp., 399 F.3d 692 (6th Cir. 2005). In that case, the Court of Appeals noted that the Supreme Court has recently narrowed the scope of ERISA preemption by requiring the lower courts to consider the

23

objectives of ERISA as a guide to the scope of the state law the Congress understood would survive.  See id. at 698 (citing N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656 (1995)).  One of those objectives was the avoidance of conflicts between state and federal regulation.  See id.  That objective supports preemption only to the extent that the state law or regulation in question (1) mandates employee benefit structures or their administration, (2) provides alternate enforcement mechanisms, or (3) binds employers or plan administrators to particular choices or precludes uniform administrative practice, thereby functioning as a regulation of an ERISA plan.  See id.

In Miami Valley Pension, the Court of Appeals explicitly held that the relationship of an ERISA plan entity, defined to include principals, employers, plans, fiduciaries, and beneficiaries, to a non-plan entity is subject to state law to the extent that it is not governed by ERISA.  See id. at 700.  Accordingly, where the third-party is a service provider to a plan entity, state law causes of action will often lie against that party.  See id. at 701.  "Indeed, permitting the suit to go forward would serve to strengthen the ERISA system . . . [by] help[ing] to ensure 'the financial integrity of the plans Congress intended to protect.'"  Id. at 701-02 (quoting Gerosa v. Savasta & Co., 329 F.3d 317, 329 (2nd Cir.), cert. denied, 540 U.S. 967 (2003)).  The Court agrees with Defendants that, to the extent that Towers did not act as a fiduciary with respect to the Plan, Defendants state law claims against Towers are not preempted by ERISA.  The state law claims are, thus, in the alternative to the ERISA indemnification claim.

24

Towers also contends that Defendants' third-party claims for negligence, malpractice or professional misconduct, negligent misrepresentation, and fraud are barred by the applicable statute of limitations, Ohio Revised Code ("O.R.C.") § 2305.09, which provides that such claims must be brought within four years or their accrual.  Towers notes that the alleged conduct upon which the claims are based occurred in 1998 and 1999, while Defendants first asserted the state law claims based upon that conduct in 2005.

In opposition to this portion of Towers' motion to dismiss, Defendants contend that their causes of action for negligence,  malpractice or professional misconduct, and negligent misrepresentation have not yet accrued because Defendants have not suffered injury or damages as a result of Towers' conduct and, indeed, will not suffer injury or damages unless Plaintiff succeeds in establishing liability against Defendants.  See Vaughn v. J.C. Penney Co., Inc., 822 F.2d 605, 610 (6th Cir. 1987).  On that basis, they contend that the statute of limitations with respect to those claims has not yet begun to run.

In its reply memorandum, Towers warms to that argument and counters that, to the extent that the causes of action have not yet accrued, Defendants are precluded from asserting any of their state law claims.  See United Steelworkers of America, Local 2116 v. Cyclops Corp., 860 F.2d 189, 194-95 (6th Cir. 1988).  The fact that the claims are inchoate and prospective does not lead ineluctably to the conclusion that the Court may not permit Defendants to assert them in this action, however.  See id. at 195-96.  Indeed,

25

where a delay in the litigation of such claims would cause hardship or prejudice to the parties, or one of them, the Court may permit them to proceed.  See id.  When the potential impact of permitting the claims to go forward before ripening is primarily hypothetical, delay is appropriate.  See id. at 196.

Defendants' liability is not contingent in any sense upon the liability of Towers.  In other words, Plaintiff's claims against Defendants are subject to complete resolution without reference to Defendants' allegations against Towers.  The result of the resolution of Plaintiff's claims against Defendants will necessarily be to moot Defendants' claims against Towers or to cause them to become ripe.  Defendants will not have been prejudiced in this litigation by delay in their ability to assert the state law claims against Towers.

On the other hand, the outcome of the litigation of those claims in this action would be more than hypothetical.  Rather, at the end of this litigation, those claims would have been mooted or have become ripe and been resolved.  Judicial resources would have been conserved.  Towers and Defendants would, on the other hand, have expended resources, potentially unnecessarily, in prosecuting and defending claims that may never mature to ripeness.  Considering all of the relevant factors, the Court is persuaded that Defendants' state law claims against Towers ought to be dismissed on the ground that they are not ripe and may never become ripe.  Towers' motion to dismiss those claims is, therefore, **GRANTED** without prejudice to the reassertion of the claims

at such time, if ever, that Defendants suffer injury or damages as a result of the conduct of Towers giving rise thereto.

Defendants base a part of their fraud claim upon the alleged overpayment of $500,000 to a group of Plan participants.  Defendants contend that the fraud claim based upon that allegation is ripe, inasmuch as Defendants have already suffered injury.  They further contend that the claim is not barred by the four-year statute of limitations because they did not discover the fraud until 2004.  They asserted the fraud claim in 2005.  The discovery rule explicitly set forth in O.R.C. § 2305.09 with respect to fraud claims, thus, provides that the fraud claim based upon the alleged overpayment is timely.

The legal premises of Defendants' argument are, therefore, sound.  Towers contends, however, that Defendants have not stated a claim for fraud based upon the alleged overpayment upon which relief may be granted.  Accordingly, they contend that the claim is subject to dismissal pursuant to Rule 12(b)(6) even if it is timely.

The elements of a fraud claim under Ohio law are

(1)     a representation or, where there is a duty to disclose, concealment of a fact,

(2)     which is material to the transaction at hand,

(3)     made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

(4)     with the intent of misleading another into relying upon it,

(5)     justifiable reliance upon the representation or concealment, and

(6)     a resulting injury proximately caused by the reliance.

See Cohen v. Lamko, 10 Ohio St.3d 167, 169 (1984).  The Court finds allegations in the second amended third-party complaint in support of each of those elements.  The allegations do not make clear whether Defendants are alleged to have made the overpayments before or after any alleged misrepresentations or concealments by Towers relating to the pertinent calculations.  Obviously, if Defendants had already made the payments and were not in a position to recoup the portion constituting the alleged overpayment from the participants, they did not do so in reliance upon a misrepresentation or concealment by Towers or their injury was not caused by the misrepresentation or concealment.  Because the allegations are susceptible to an interpretation satisfying all of the elements of the claim, however, Towers' motion to dismiss the fraud claim based upon the alleged overpayment is not well-taken and is hereby **DENIED**.

D.  Conclusion

    For those reasons, Defendants' motion for partial dismissal of the second amended complaint (Doc. 24) is hereby **DENIED**.  Defendants' motion for judgment on the pleadings (Doc. 82) is also hereby **DENIED**.  The Third-Party Defendant's motion to dismiss the second amended third-party complaint (Doc. 83)  is hereby **GRANTED**, in

28

part, and **DENIED**, in part.  Defendants' state law claims are hereby **DISMISSED**

without prejudice with the exception of their claim for fraud based upon the alleged

overpayment of $500,000 to some 400 Plan participants.  This action will proceed on

Plaintiff's claims against Defendants and Defendants claims for ERISA indemnification

and fraud, as outlined herein, against Third-Party Defendant Towers.

**IT IS SO ORDERED.**

_____/s/_____
Sandra S. Beckwith, Chief Judge
United States District Court