# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CHERYL CLEVENGER, Individually and on
Behalf of All Those Similarly Situated,
     Plaintiff,

       vs.

DILLARD'S DEPARTMENT STORES, INC., et al.,
     Defendants/Third-Party Plaintiffs,

       vs.

TOWERS, PERRIN, FORSTER & CROSBY, INC.,
     Third-Party Defendant/Fourth-Party Plaintiff,

       vs.

FRIDAY ELDREDGE & CLARK, LLP,
     Fourth-Party Defendant.

Civil Action No. 1:02-cv-558
(Beckwith, J.; Hogan, M.J.)

**ORDER**

This matter is before the Court on Third-Party Defendant/Fourth-Party Plaintiff Towers Perrin's motion to compel discovery of meeting notes written by attorney Joseph Hurst, Esq., counsel for Defendants/Third-Party Plaintiffs Dillard's, Inc. (Doc. 139), Dillard's memorandum in opposition thereto (Doc. 153), and Towers Perrin's reply memorandum. (Doc. 155).

Towers Perrin seeks an order compelling the production of notes taken by the Dillard's Defendants' attorney, Joseph Hurst, during a meeting held with Towers Perrin representatives regarding the termination of the Mercantile Stores Pension Plan and the distribution of benefits under the Plan. The specific documents to which the Dillard's Defendants object have been identified as:

1. October 7, 1998 notes of Joseph Hurst, Esq. (regarding meeting with Towers Perrin), Bates No. FEC0640340; and

2. Undated notes of Joseph Hurst, Esq. (referencing shut-down benefits and identifying

Cecil, Anthony, Steve, Richard[1]"), Bates No. FEC0640341.

(Doc. 140, Exh. 4).  Towers Perrin asserts the meetings occurred several months prior to the termination of the Plan and believes such notes support its position that Hurst himself and the Dillard's Defendants–and not Towers Perrin–made the key decisions regarding the termination of the Plan and the distributions to be made under the Plan.

The Dillard's Defendants oppose the production of these notes to Towers Perrin asserting the notes are protected by the attorney-client privilege.[2]  Dillard's asserts that Hurst prepared these notes, in confidence, to provide legal advice to the Dillard's Defendants.

Towers Perrin argues that the attorney-client privilege does not apply to the Hurst notes because the notes reflect communications with a third party, Towers Perrin, and because there is no communication between Hurst and his client (Dillard's) to protect.  Dillard's argues that while the communications made in the meetings are not covered by the attorney-client privilege and Mr. Hurst may be questioned concerning what took place during the meetings, Towers Perrin cannot compel the production of Hurst's notes which he prepared for the purpose of advising his client Dillard's.  Dillard's contends the notes reflect Hurst's "legal opinions and how he used the facts he gathered from the meetings to advise Defendants." (Doc. 153 at 6).

Confidential communications made between a client and an attorney in an effort to obtain legal services are protected under the attorney-client privilege and  may not be disclosed. *United States v. Goldfarb*, 328 F.2d 280, 281 (6th Cir.), *cert. denied*, 377 U.S. 976 (1964).  "Claims of

---

[1]     These appear to be notes from a meeting with Towers Perrin employees Cecil Hemingway, Anthony Lloyd, Richard Sponenberg, and Steve Klubock.

[2]     The Dillard's Defendants no longer oppose the production of these notes on the basis of attorney work product. (Doc. 153).

attorney-client privilege are 'narrowly construed because [the privilege] reduces the amount of

information discoverable during the course of a lawsuit.'" *In Re Columbia/HCA Healthcare

Corporate Billing Practices*, 293 F.3d 289, 294 (6th Cir. 2002), quoting *United States v. Collis*,

128 F.3d 313, 320 (6th Cir. 1997). The attorney-client privilege "applies only where necessary

to achieve its purpose and protects only those communications necessary to obtain legal advice."

*Id.,* quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986). The elements of the

attorney-client privilege are as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser
> in his capacity as such, (3) the communications relating to that purpose, (4) made
> in confidence (5) by the client, (6) are at his instance permanently protected (7)
> from disclosure by himself or by the legal adviser, (8) unless the protection is
> waived.

*Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (citations omitted). The Sixth Circuit in

*Baxter* articulated two principles behind the privilege:

> The first is that loyalty forms an intrinsic part of the relationship between a
> lawyer and client in our adversary system. This loyalty is offended if the lawyer
> is subject to routine examination *regarding the client's confidential disclosures*.
> The second principle is that the privilege *encourages clients to make full
> disclosure to their lawyers*. A fully informed lawyer can more effectively serve
> his client and promote the administration of justice.

*Baxter*, 134 F.3d at 356 (emphasis added, citations omitted). The attorney-client privilege

protects a client's disclosures to his or her attorney and, derivatively, the attorney's

communications to the client where such communication has previously been disclosed by the

client to the attorney, *Tax Analysts v. I.R.S.*, 117 F.3d 607, 618 (D.C. Cir. 1997), or where those

communications would reveal the substance of a confidential communication by the client. *See*

*Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000). *See also Boling v. First Utility

District of Knox County*, 1998 U.S. Dist. LEXIS 21157, *10 (E.D. Tenn. Oct. 5, 1998) ("the

attorney-client privilege protects an attorney's communications to his or her client which are in the nature of legal advice or opinion *and* which might reveal the confidences of the client. . . . On the other hand, correspondence from counsel to plaintiff which is based on information learned from any person outside the plaintiff's organization is not privileged."); *Alexander v. F.B.I.*, 1998 WL 292083 (D.D.C. 1998) ("the privilege extends to communications from attorneys to their clients if the communications rest on confidential information obtained from the client"); *Savoy v. Richard A. Carrier Trucking, Inc.*, 178 F.R.D. 346, 350 (D. Mass. 1998) ("Strictly constructed, the privilege applies 'to a confidential communication from an attorney to a client, but only if that information is based on confidential information provided by the client. . . . The purpose of the privilege is to insure that the client may confide in his attorney to obtain legal advice. Unless the legal advice reveals what the client has said, no legitimate interest of the client is impaired by disclosing the advice."); *Ami-Rec-Pro, Inc. v. Illinois Tool Works, Inc.,* 1998 WL 70607 (N.D. Ill. 1998) ("Lawyer-authored communications are covered by the privilege only if they reveal the client's confidences.").  However, the attorney-client privilege "does not envelope everything arising from the existence of an attorney-client relationship." *United States v. Goldfarb,* 328 F.2d 280, 281 (6th Cir. 1964).  The attorney-client privilege does not apply to information imparted to the attorney from a third party which is then communicated to the client.  *See Alexander,* 198 F.R.D. at 309 ("It is important to recognize that this rationale for the attorney-client privilege is inapplicable where an attorney is conveying to the client communications made to or by a third party."); *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 54 (S.D.N.Y. 2000) ("First, and foremost, few, if any, of the documents in issue appear to contain or reveal confidential communications from the underlying client, CKI, made

for the purpose of obtaining legal advice. Yet it is only such communications that the attorney-client privilege ultimately protects. . . .  Thus, the possibility that communications between RLM and BSF may help the latter to formulate legal advice is not in itself sufficient to implicate the privilege: 'the privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client.'"); *United States v. Motorola, Inc.*, 1999 WL 552553, *2 (D.D.C. May 28, 1999) ("It may also occur that a lawyer may collect facts from other sources and provide the client with an opinion or guidance as to their significance. It is equally clear that these facts, even if interwoven into the legal advice are not protected by the privilege.").[3]  As explained by one court, "When a lawyer gives legal advice to the client it does not automatically trigger the attorney-client privilege.  Rather, statements which would reveal the substance of the confidential communication are protected. . . . Thus, this court will not protect documents based solely on the assertion that they reflect legal advice.  Instead, the court will look to the elements [of the privilege] to determine whether or not the attorney-client privilege applies." *Midwestern University v. HBO & Co.*, 1999 WL 32928 (N.D. Ill. 1999).

In the instant case, examination of the elements of the attorney-client privilege set forth in *Baxter*, 134 F.3d at 355-56 shows the privilege does not apply to the Hurst notes.  Dillard's asserts the notes prepared by Hurst "reflect his legal opinions and how he used the facts he gathered from the meetings to advise Defendants." (Doc. 153 at 6).  The fact that the notes may

---

[3]     The cases cited by Dillard's are not to the contrary.  The memoranda and notes at issue  in those cases reflected the notes and information of the client employees, not third parties.  *See Pankiw v. Federal Ins. Co.*, No. 04-2334, 2006 U.S. Dist. LEXIS 35400, at *26-*27 (N.D. Ohio May 31, 2006); *In re Om Group Sec. Litig.*, 226 F.R.D. 579, 587-88 (N.D. Ohio 2005); *United States v. Ohio Edison Co.*, No. C2-99-1181, 2003 U.S. Dist. LEXIS 25029, at *10-*12 (S.D. Ohio Jan. 6, 2003).

reflect legal advice does not make the notes privileged communication.  What is pertinent is whether the notes reflect any confidential communications made by Dillard's to Hurst which would then be revealed by disclosure of the notes to Towers Perrin.  Dillard's makes no assertion that disclosure would reveal such confidential communications.  The notes taken by Hurst during his meeting with Towers Perrin representative reflect facts and disclosures made by others, not disclosures made by his client Dillard's.  The fact that Hurst may have then later communicated with Dillard's about the notes and given a legal opinion thereon does not convert the notes themselves into attorney-client communication.

"The burden of establishing privilege rests with the person asserting it." *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983).  Dillard's has failed to meet its burden of establishing the attorney-client privilege in this case or to raise a substantial question that the notes in question contain confidential communications made by Dillard's for the purpose of receiving legal advice.  Accordingly, the motion to compel is **GRANTED**.

**IT IS SO ORDERED.**


Date:    9/20/2006                              s/Timothy S. Hogan_____
                                                Timothy S. Hogan
                                                United States Magistrate Judge