UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHERYL CLEVENGER, Individually and on
Behalf of All Those Similarly Situated,
    Plaintiff,

Civil Action No. 1:02-cv-558
(Beckwith, J.; Hogan, M.J.)

vs.

DILLARD'S DEPARTMENT STORES, INC., et al.,
    Defendants/Third-Party Plaintiffs,

**ORDER**

vs.

TOWERS, PERRIN, FORSTER & CROSBY, INC.,
    Third-Party Defendant/Fourth-Party Plaintiff,

vs.

FRIDAY ELDREDGE & CLARK, LLP,
    Fourth-Party Defendant.

This matter is before the Court on Third-Party Defendant/Fourth-Party Plaintiff Towers Perrin's motion to compel production of documents from Defendants/Third-Party Plaintiffs Dillard's (Doc. 179), Defendants/Third-Party Plaintiffs Dillard's memorandum in opposition thereto (Doc. 187), and Towers Perrin's reply memorandum. (Doc. 194).

Towers Perrin seeks an order requiring the Dillard's Defendants to produce certain communications between the Dillard's Defendants and Friday, Eldredge & Clark relating to Towers Perrin's work on the termination of the pension plan the Dillard's Defendants inherited through its acquisition of Mercantile Stores, Inc.  In response to certain discovery requests, the Dillard's Defendants submitted a privilege log for a number of responsive documents.  Towers Perrin seeks production of communications between Joe Hurst and the Dillard's Defendants

during the time of the Plan termination as listed in Exhibit C to Document 180.[1] Towers Perrin asserts that Hurst, an attorney at Friday Eldredge, was primarily responsible for directing Towers Perrin's work on the termination of the Plan and communicated crucial information to the Dillard's Defendants concerning the delays in the distribution of Plan benefits. Towers Perrin further asserts that Hurst was the appointed liaison for the Dillard's Defendants with regard to Towers Perrin. Towers Perrin states that Hurst was fully aware of the delay in lump sum distributions and specifically approved such distributions being made in February and March 1999, after the January 23, 1999 deadline that the Dillard's Defendants allege was missed. Towers Perrin contends that if the documents listed on the privilege log contain privilege communications,[2] as asserted by the Dillard's Defendants, Towers Perrin is nevertheless entitled to review such documents because the Dillard's Defendants have waived any claim to the attorney-client privilege by putting those communications "at issue" in this litigation. Towers Perrin points to the Dillard's Defendants Third-Party Complaint which alleges that Towers

---

[1] Towers Perrin states that it does not seek production of any documents listed on Exhibit C which do not relate to the Plan termination. (Doc. 194 at 10 n. 6). One item listed on Exhibit C is not a communication involving attorney Hurst and should not be subject to the Court's order. (Doc. 180, Exh. C at p.5, FEC0034517).

[2] Towers Perrin does not concede that such communications are protected by the attorney-client privilege. Towers Perrin assumes only, for purposes of the instant motion, that *if* such communications are protected by the attorney-client privilege, the privilege has nevertheless been waived for the reasons set forth in its motion. (Doc. 194 at 9).

Indeed, the Court questions whether the attorney-client privilege even applies to the communications at issue. Towers Perrin seeks documents showing whether Attorney Hurst relayed to the Dillard's Defendants the information provided by Towers Perrin to Attorney Hurst. This Court's previous Order of September 20, 2006 would seem to apply equally here. The Court found the notes taken by Attorney Hurst during his meetings with Towers Perrin representatives were not protected by the attorney-client privilege: "What is pertinent is whether the notes reflect any confidential communications made by Dillard's to Hurst which would then be revealed by disclosure of the notes to Towers Perrin. . . . The notes taken by Hurst during his meeting with Towers Perrin representatives reflect facts and disclosures made by others, not disclosures made by his client Dillard's. The fact that Hurst may have then later communicated with Dillard's about the notes and given a legal opinion thereon does not convert the notes themselves into attorney-client communication." (Doc. 158 at 6). Likewise, communications related from Towers Perrin to Hurst, and in turn relayed to Dillard's would not be protected by the attorney-client privilege. Nevertheless, like Towers Perrin, the Court will assume for purposes of the instant motion that the privilege applies.

Perrin had a duty to communicate accurately but "failed to inform" the Dillard's Defendants of certain key information, information which Towers Perrin says was provided to attorney Hurst:

> 17. Among the duties Towers assumed under its contract with Defendants were: …*to communicate* accurately and completely with Defendants; [and] *to advise* Defendants regarding compliance with the Plan and the Employee Retirement Income Security Act of 1974, as amended ("ERISA")….
> * * *
>
> 24. Several weeks after the December 18, 1998 letter, in a status letter dated January 8, 1999 to the Chief Financial Officer of Dillard's, who was a member of the Committee, Towers's Steven H. *Klubock made no reference to the status of the questionable employees referenced in the December 18, 1998 letter or that there would be any delays in distributions.* . . .
> * * *
>
> 44. *Although Towers did not inform Defendants that there would be any change in the schedule for the termination of the Plan,* or its responsibility under the schedule for the termination of the Plan, or its responsibility under the schedule for payment of lump sum distributions by January 23, 1999, Towers represented to Defendants in e-mails in November 1998 and subsequently that the payment of lump sum distributions after January 31, 1999 due to Towers's delay in arranging for lump sum distributions would not impact the use of a GATT interest rate of 6.33% in determining the amount of such lump sum distributions.
> * * *
>
> 48. *Unknown to Defendants until the Spring of 2004, when it was discovered during the administrative process in this case by Defendants' counsel,* a limited number of participants received a lump sum distribution of pension benefits based on Towers's use of 5.01% interest rate calculation.
> * * *
>
> 63. *Due to Towers's concealment of this information from Defendants*, Defendants were unable to discover the true facts.
> * * *
>
> 87. As set forth supra, Towers knowingly made misrepresentations and *omitted disclosing material facts to Defendants*. . . .

(Third-Party Complaint (emphasis added by Towers Perrin)).  Towers Perrin also cites to the Dillard's Defendants' Affirmative Defenses against Towers Perrin, wherein the Dillard's

Defendants aver that Towers Perrin failed to inform Dillard's of certain other allegedly key information – information that Towers Perrin says it provided directly to Mr. Hurst:

> 66. Towers knew or should have known on or about September 24, 1998 that it could not effect the distribution of all or substantially all lump sum payments to Plan participants by January 30, 1999. *Towers never disclosed this fact to any of the Defendants.*
> * * *
>
> 82. Two days before Towers's January 8, 1999 status report to Defendants, Towers's Jay Popky sent an e-mail to Towers's Thomas Cannon in which Popky proposed informing Plan participants that they would receive lump sum distributions either on February 28, 1999 or by March 31, 1999. *Towers did not inform Defendants of this communication.*

(Answer of the Dillard's Defendants to Counterclaim of Towers Perrin, filed March 7, 2006 (emphasis added by Towers Perrin)). Towers Perrin contends that the Dillard's Defendants have squarely placed their communications with Friday Eldredge (specifically attorney Hurst) at issue in this litigation by claiming that Towers Perrin failed to notify the Dillard's Defendants that there would be a delay in the payments.

Towers Perrin further contends that the Dillard's Defendants used Hurst as a liaison between the Dillard's Defendants and Towers Perrin and therefore placed the communications with Hurst at issue. Towers Perrin presents evidence from Towers Perrin's employees who worked on the Plan termination that Hurst was the primary party giving them direction on the details of the Plan termination. (Doc. 194 at 15-16 and citations therein). Towers Perrin contends that by placing Hurst in a position where he directed the activities of Towers Perrin with regard to the Plan termination and because Hurst specifically approved Towers Perrin's actions on the timing of the payments the Dillard's Defendants have waived any claim of privilege.

4

The Dillard's Defendants contend that Towers Perrin's waiver theory is unsupported by the facts or the law.  The Dillard's Defendants state that their claims and defenses are not predicated on the privileged communications with Hurst, but rather on Towers Perrin's own documents and witnesses.  The Dillard's Defendants point to documents prepared by Towers Perrin showing the specific dates to be met by Towers Perrin whereby Plan participants were to be notified of and receive Plan benefit distributions. (Doc. 187 at 4-5 and citations therein).  The Dillard's Defendants assert that Towers Perrin failed to meet the deadlines it set and that it was not until April of 2006 that the Dillard's Defendants discovered documents showing that by December 11, 1998, Towers Perrin in fact determined it could not meet its obligations in a timely manner. (Doc. 187 at 6 and citations therein).  The Dillard's Defendants cite to additional documents and deposition testimony which purport to support their claims against Towers Perrin (Doc. 187 at 7-9), and contend that such facts refute Towers Perrin's claim of an implied waiver of the attorney-client privilege between the Dillard's Defendants and attorney Hurst.

The Dillard's Defendants further argue that Ohio law, which applies to the common law contract and tort claims asserted by the Dillard's Defendants against Towers Perrin as well as to Towers Perrin's counterclaim, rejects the implied waiver theory advocated by Towers Perrin.  In the alternative, the Dillard's Defendants contend that if the Court applies federal law regarding wavier of the attorney-client privilege, the Dillard's Defendants have not waived the privilege because they did not place Attorney Hurst's communications or legal advice at issue in this case.

As an initial matter, the Court must decide whether Ohio or federal law applies to the

question of attorney-client privilege in this case.[3]  Rule 501 of the Federal Rules of Evidence provides:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501.  The Sixth Circuit has held that in a federal question case where there are pendent state law claims "the existence of pendent state law claims does not relieve [the court] of [its] obligation to apply the federal law of privilege." *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992).  "[E]ven where pendent claims exist, the first sentence of Rule 501, not the second, governs, such that federal common law applies, and not the rule of the state from which the law of the pendent claims emanates." *Melhelm v. Meijer*, 206 F.R.D. 609, 615 (S.D. Ohio 2002) (citing *Hancock*, 958 F.2d at 1373).  *See also Nilavar v. Mercy Health System-Western Ohio*, 210 F.R.D. 597, 601 (S.D. Ohio 2002) (where both federal and supplemental state law claims are at issue the federal common law of privileges controls as to the entire case); *Freed v. Grand Court Lifestyles, Inc.*, 100 F. Supp.2d 610, 612 (S.D. Ohio 1998) (state privilege law is not controlling in federal question cases even when pendent state law claims exist).  Thus, this Court is bound to apply federal common law and not the law of the State of Ohio in determining

---

[3]In the Dillard's Defendants' memorandum in opposition to Towers Perrin's motion to compel discovery of meeting notes written by attorney Joseph Hurst, Esq. (Doc. 153), the Dillard's Defendants cited solely to federal law on the issue of whether notes taken by Hurst during a meeting held with Towers Perrin representatives regarding the termination of the Mercantile Stores Pension Plan were protected by the attorney-client privilege.  It appears incongruent for Dillard's to argue the attorney-client privilege is governed by federal law in its response to the previous motion to compel, while arguing Ohio law applies to the current motion.

the attorney-client privilege issue in this case.

The attorney-client privilege may be waived expressly or by implication. *In re Lott*, 424 F.3d 446, 452 (6th Cir. 2005). "Implied waivers are consistently construed narrowly. Courts 'must impose a waiver no broader than needed to ensure the fairness of the proceedings before it.' *Bittaker*, 331 F.3d at 720 (habeas proceeding). 'A broad waiver rule would no doubt inhibit the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote.' *Id*. at 722." *In re Lott*, 424 F.3d at 453. In the instances where the privilege is found to be waived, a party's "pleading places at issue the subject matter of a privileged communication in such a way that the party holding the privilege will be forced to draw upon the privileged material at trial in order to prevail." *Lott,* 424 F.3d at 453, quoting Developments in the Law-Privileged Communications, Implied Waiver, 98 Harvard L. Rev. 1629, 1638 (1985); *see also U.S. Fire Insurance Co. v. Asbestospray, Inc.*, 182 F.3d 201, 212 (3d Cir. 1999) (party waives the privilege only when he or she "has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue."); *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1175 (7th Cir. 1995). ("[T]he attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation."). An attorney-client communication is placed at issue "when a party affirmatively uses privileged communications to defend against or attack the opposing party." *Beery v. Thomson Consumer Electronics, Inc.*, 218 F.R.D. 599, 604 (S.D. Ohio 2003) (citations omitted). "Waiver therefore stops a party from manipulating an essential component of our legal system--the attorney client privilege–'so as to release information favorable to it and withhold anything else.'" *Beery*, 218 F.R.D. at 604

(quoting *Kelsey-Hayes Co. v. Motor Wheel Corp.,* 155 F.R.D. 170, 171 (W.D. Mich. 1991).[4]

In this case, Towers Perrin presents convincing evidence that the Dillard's Defendants impliedly waived the privilege by placing its communications with attorney Hurst at issue. Towers Perrin has produced evidence showing that Attorney Hurst was the primary contact on the Plan termination, that Hurst was informed on numerous occasions that payments would not be made in January 1999, and that Hurst approved Towers Perrin making payments in February and March. (Doc. 179, Exh. D at 92-93, Exh. C at 101-102, Exh. B at 117; Doc. 194, Exh. D, 129-130, Dillard's Exh. 131, Exh. E at 348-349, Exh. F at 107, 108, 186, Exh. G at 101). While the Dillard's Defendants present evidence that Towers Perrin communicated with other Dillard's Defendants' personnel, this does not negate the strong evidence showing that Hurst was the primary party giving Towers Perrin direction on the Plan termination and that Hurst acted as the liaison between Towers Perrin and Dillard's on the termination of the Plan. "An attorney-client communication is placed at issue when the party makes an assertion that in fairness requires examination of protected communications." *Beery v. Thomson Consumer Electronics, Inc.,* 218 F.R.D. 599, 604 (S.D. Ohio 2003) (internal quotations and citations omitted). By alleging that Towers Perrin promised to make all lump sum distributions by January 23, 1999 and by further alleging that Towers Perrin failed to inform the Dillard's Defendants of the delayed payments to Plan participants, the Dillard's Defendants have placed their communications with Attorney Hurst squarely at issue. Fairness dictates that Towers Perrin be able to discover what Attorney Hurst reported to the Dillard's Defendants on the Plan termination in order to defend itself

---

[4]"To be sure, litigants cannot hide behind the privilege if they are relying upon privileged communications to make their case. '[T]he attorney-client privilege cannot at once be used as a shield and a sword.' *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). But, while the sword stays sheathed, the privilege stands." *In re Lott*, 424 F.3d at 454.

against Dillard's claims in this matter. Thus, the Dillard's Defendants have impliedly waived the privilege for those communications with Attorney Hurst related to the Plan termination.

Accordingly, Towers Perrin's motion to compel production of documents from Dillard's (Doc. 179) is **GRANTED**.


Date:_1/11/2007___                             _s/Timothy S. Hogan_____
                                               Timothy S. Hogan
                                               United States Magistrate Judge