UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Cheryl Clevenger, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 1:02-cv-558 |
| Dillard's Department Stores, Inc., | ) |
| Defendant/ Third-Party Plaintiff, | ) |
| v. | ) |
| Towers, Perrin, Forster & Crosby, Inc., | ) |
| Third-Party Defendant/ Fourth-Party Plaintiff, | ) |
| v. | ) |
| Friday, Eldredge & Clark, LLP, | ) |
| Fourth-Party Defendant. | ) |

ORDER

This matter is before the Court upon a motion for summary judgment filed by Fourth-Party Defendant Friday, Eldredge & Clark, LLP ("Friday Eldredge").  Doc. no. 246.  Third-Party Defendant Towers, Perrin, Forster & Crosby, Inc. ("Towers Perrin") opposes the motion.  Doc. no. 255.  For the reasons stated below, the motion is **GRANTED**.

1

I. Introduction

Plaintiff Cheryl Clevenger filed this action under the Employee Retirement Income Security Act ("ERISA") against Defendants Dillard's Department Stores, Inc. ("Dillard's"), Mercantile Stores Pension Plan (the "Plan"), and Mercantile Stores Pension Committee (the "Committee.)"[1] Plaintiff brought claims on behalf of a putative class of Plan participants arising out of the payment of lump sum pension benefits following Dillard's purchase of Mercantile Stores Company, Inc. and the termination of the Plan. Defendants in turn filed third-party claims against Towers Perrin. Towers Perrin then filed fourth-party claims for contribution and indemnification against Friday Eldredge, a limited liability partnership engaged in the practice of law with a place of business in Little Rock, Arkansas, which provided legal services as outside counsel to Defendants in connection with the termination of the Plan. Towers Perrin alleges that Friday Eldredge, through its attorneys, and specifically through its partner Joseph Hurst, exercised substantial discretionary authority and control over the management, implementation, application, disposition and administration of the Plan and the Plan assets, including drafting Plan amendments and advising Dillard's on the content of the amendments; causing certain lump sum payments to be made; providing instructions on the payment of lump sum distributions and contribution limits; and providing guidance to Dillard's on how to maximize the amount of cash that would revert to Dillard's. Towers Perrin

---

[1] The Plan and the Committee have since been dismissed from the lawsuit.

contends that the amendments to the Plan impacted the Plan assets and the benefits received by the Plan participants, including the lump sum distributions and the interest rate to be used to calculate those payments.  Towers Perrin also claims that Friday Eldredge, "acting as attorney and agent for Dillard's, would on certain matters direct the activities of Towers Perrin."

Towers Perrin claims that if it is adjudicated to be liable to Dillard's on any basis and it is determined that Dillard's sustained damages, then Towers Perrin is entitled to contribution from Friday Eldredge on the ground that Friday Eldredge "negligently and/or in breach of [its] duty provided or failed to provide services in accordance with its engagement with [Dillard's] and in a manner that permitted [Dillard's] to accomplish [its] legal and business objectives."[2]  Towers Perrin brings a claim for indemnification on the same ground, claiming that it is entitled to complete indemnity in the event it is found liable to Dillard's on any basis.

## II.  Friday Eldredge's motion for summary judgment

Friday Eldredge moves the Court for summary judgment on Towers Perrin's claims.  Friday Eldredge asserts that to establish a right of indemnification, Towers Perrin must establish that Friday Eldredge is directly liable to Defendants - the injured party who paid the damages in settlement of the Plaintiff Class's claims - and to obtain contribution,

---

[2]Presumably Towers Perrin meant to allege that insofar as Friday Eldredge negligently provided services, it did so in a manner that was *not* in accordance with its engagement and which *prevented* the Defendants from accomplishing their objectives.

3

Towers Perrin and Friday Eldredge must be jointly liable in tort to Dillard's. Friday Eldredge argues that Towers Perrin cannot establish a factual or legal basis for its claims because (1) there is no evidence Friday Eldredge made any misrepresentation in connection with, or during the course of, its representation of Dillard's; (2) there is no evidence that Friday Eldredge breached a duty to Dillard's or caused damages to Dillard's and, specifically, no evidence that Friday Eldredge committed legal malpractice; and (3) Friday Eldredge owed no duty to Towers Perrin because privity is lacking, and Towers Perrin's claim does not fall within one of the statutory exceptions to the privity requirement under Arkansas law for bringing an action against an attorney. In addition, Friday Eldredge contends that Towers Perrin cannot recover indemnity or contribution under a theory of negligent misrepresentation because Arkansas does not recognize such a cause of action.

In response, Towers Perrin contends that there is an issue of fact as to whether it is entitled to indemnification from Friday Eldredge. Towers Perrin argues that there is at least a triable issue of fact as to whether Mr. Hurst's "misrepresentations and negligence" were the true cause of Dillard's injuries under Dillard's primary theories of liability, which Towers Perrin identifies as follows: (1) Towers Perrin allegedly breached a promise to distribute all lump sum payments to Plan participants by January 30, 1999; (2) Towers Perrin allegedly failed to warn Dillard's that no payments would be made before February 1999; and (3) Towers Perrin allegedly failed to warn Dillard's of the legal and regulatory risks posed by calculating lump sum distributions based on the November 1,

4

1998, Plan Amendment.

Towers Perrin alleges that if Dillard's prevails on its first theory of liability against Towers Perrin, then "the true wrongdoer is Mr. Hurst, . . . who was serving as Dillard's conduit to Towers Perrin." Towers Perrin alleges that it was Mr. Hurst who, "speaking on behalf of Dillard's," approved Towers Perrin making no payments until February 1999 and who failed to instruct Towers Perrin to make all payments in January. Towers Perrin alleges that "[g]iven Mr. Hurst's role as the liaison between his client and Towers Perrin, these repeated failures to say "no" to Towers Perrin [delaying payments] can only be construed in the end as a clear 'yes.'" Towers Perrin contends that if Dillard's succeeds on its third-party claims, then there would necessarily be a finding that a representation that approved delaying the distribution of lump sums "was the opposite of Dillard's wishes, rendering it false." Towers Perrin argues that Mr. Hurst's failure to assert affirmatively that Dillard's disagreed with Towers Perrin's plans to delay distributions and his failure to disclose Dillard's alleged insistence that payments be made in January constitutes "actionable fraud and legal malpractice under Arkansas law."

Towers Perrin further argues that if Dillard's prevails on the theory that Towers Perrin failed to distribute payments by January 30, then there is at least a triable issue of fact as to whether "another fraud of Mr. Hurst's will be responsible: his misrepresentation of the validity of the November 1 Plan Amendment." Towers Perrin claims that the Plan Amendment providing that the annuity starting date was fixed as January 23, 1999, regardless of the date of actual payment, was the basis upon which it calculated all

5

payments at the 1998 Plan year rate. Towers Perrin claims that it received a copy of the Amendment from Mr. Hurst, who drafted it, and there is no evidence he expressed any reservations about its validity or disclosed material defects in the amendment process. Towers Perrin claims that questions existed regarding the validity of the Plan Amendment because Mr. Hurst had Dillard's Treasurer John Hawkins sign two different versions and then failed to designate the operative version until some time after February 1999, thereby creating an issue as to whether the Amendment could properly establish an earlier annuity starting date. In addition, Towers Perrin claims that the Plan Amendment was not accompanied by a written resolution of the Board of Directors and the Committee, as required by the Plan, thereby calling into question the validity of the Plan Amendment and the annuity starting date established by the Amendment. Towers Perrin claims that Mr. Hurst "had a duty to disclose this information because, as the individual directing Towers Perrin's activities and as ERISA counsel to Dillard's, he knew that Towers Perrin relied on him to supply information regarding Plan amendments" and his "failure to disclose these material defects in the amendment process is actionable fraud." Towers Perrin claims that if there was any doubt about the Amendment's validity, Towers Perrin would have altered its conduct.

Towers Perrin also contends that there is a triable issue of fact as to whether Mr. Hurst's failure to competently handle the Plan amendment process is legal malpractice. Specifically, Towers Perrin alleges that Mr. Hurst's failure to advise Dillard's that there was at least substantial doubt as to whether the November 1, 1998, Plan Amendment was

6

effective, and that there was a risk Dillard's would be exposed to a substantial loss in subsequent litigation, was a deviation from the applicable standard of care.

Towers Perrin contends that it is entitled to indemnity based on Dillard's second theory of liability because Mr. Hurst is responsible for any damages flowing from Towers Perrin's alleged failure to warn Dillard's that lump sum payments would be delayed. Towers Perrin contends that Mr. Hurst served as the liaison between it and Dillard's regarding the Plan termination, and Towers Perrin provided to Mr. Hurst, while he was acting in that capacity, ample warnings that lump sum distributions would not be made before February 1999. Towers Perrin claims that if Dillard's prevails against it on Dillard's claims that Towers Perrin is liable for professional malpractice and negligent misrepresentation based on its alleged failure to warn of possible delay, "then the cause of that injury will be Mr. Hurst's failure to relay Towers Perrin's warnings to [Dillard's] - conduct that amounts to actionable fraud by Mr. Hurst."

Towers Perrin argues that it is entitled to indemnification if Dillard's prevails on its third theory of liability, which is that Towers Perrin allegedly "cover[ed] up [Dillard's] loss from the failure to meet the [lump sum distribution] deadline by supporting a 'stretch' interpretation of an 11th hour plan amendment without disclosing the risk that such interpretation might not survive a judicial or regulatory challenge."[3] Towers Perrin claims that Friday Eldredge's negligence and malpractice in failing to warn of a serious

---

[3]The "stretch" interpretation is that the delay in payments beyond the annuity starting date and into the next Plan year could be excused under the administrative delay rule.

7

litigation risk caused Dillard's alleged damages. Towers Perrin contends that Mr. Hurst owed Dillard's a duty to warn about such risks, particularly with regard to the validity of the November 1 Plan amendment. Towers Perrin contends that if Mr. Hurst breached this duty of care to Dillard's, then it is his breach that will have proximately caused any damages that Dillard's may have incurred.

Finally, in support of its contribution claim, Towers Perrin asserts that there is an issue of fact whether Friday Eldredge was a joint tortfeasor that should be held accountable for whatever portion of Dillard's alleged damages Friday Eldredge caused.

III. Applicable law

Friday Eldredge asserts that both Arkansas and Ohio have adopted the Uniform Contribution Among Tortfeasors Act, so that no conflict of law exists in this regard. See A.C.A. § 16-61-202; O.R.C. § 2307.25. Towers Perrin does not dispute this and concedes that the Ohio law of indemnity applies to its claims against Friday Eldredge. Accordingly, in resolving the summary judgment motion, the Court will refer to the Ohio law of indemnification, which has been set forth in the Court's prior Orders, and O.R.C. § 2307.25, which succinctly summarizes the law governing a claim for contribution as follows:

> (A) Except as otherwise provided in sections 2307.25 to 2307.28 of the Revised Code, if one or more persons are jointly and severally liable in tort for the same injury or loss to person or property or for the same wrongful death, there may be a right of contribution even though judgment has not been recovered against all or any of them. The right of contribution exists only in favor of a tortfeasor who has paid more than that tortfeasor's proportionate share of the common liability, and that tortfeasor's total

> recovery is limited to the amount paid by that tortfeasor in excess of that tortfeasor's proportionate share. No tortfeasor may be compelled to make contribution beyond that tortfeasor's own proportionate share of the common liability. There is no right of contribution in favor of any tortfeasor against whom an intentional tort claim has been alleged and established.

As for the substantive law to be applied, Friday Eldredge contends that pursuant to Ohio's choice of law rules, Arkansas substantive law governs because Arkansas has the most significant contacts with regard to the legal malpractice and misrepresentation claims asserted by Towers Perrin. See Morgan v. Biro Mfg. Co., 15 Ohio St.3d 339, 342, 474 N.E.2d 286, 289 (1984) (setting forth Ohio's choice of law rules for tort actions). Friday Eldredge contends that Mr. Hurst's dealings with Towers Perrin were conducted largely by telephone, fax and e-mail, although Mr. Hurst did attend one meeting in Little Rock at Dillard's corporate headquarters at which four representatives of Towers Perrin were present. Friday Eldredge further contends that Towers Perrin's allegations, if true, caused injury to Dillard's in Arkansas; Arkansas has the greatest interest in protecting the victim (i.e., Dillard's); certainty, predictability, and uniformity are promoted by applying Arkansas law to the actions of attorneys practicing in Arkansas and advising Arkansas residents; the expectations of the client and attorney are based upon Arkansas law; Friday Eldredge practiced law inside the State of Arkansas, advising its client in Arkansas from its Arkansas office; because Friday Eldredge was advising Dillard's on ERISA, no state has a greater connection than any other state to the litigation; and the policies of the forum state, Ohio, have very little connection to the underlying litigation.

Towers Perrin assumes for purposes of the summary judgment motion that

9

Arkansas law governs its underlying claims against Friday Eldredge. In accordance with Towers Perrin's assumption, and in view of the absence of any indication in the record that any other state has a greater connection to the substantive claims than Arkansas does, the Court will apply the substantive law of Arkansas.

Generally, Arkansas law requires that there be privity of contract in order for an attorney to be liable to an individual for professional malpractice. See A.C.A. § 16-22-310; Jackson v. Ivory, 353 Ark. 847, 858-861, 120 S.W.3d 587, 594-595 (2003). Section 16-22-310 provides as follows:

> (a) No person licensed to practice law in Arkansas and no partnership or corporation of Arkansas licensed attorneys or any of its employees, partners, members, officers, or shareholders shall be liable to persons not in privity of contract with the person, partnership, or corporation for civil damages resulting from acts, omissions, decisions, or other conduct in connection with professional services performed by the person, partnership, or corporation . . .

The statute provides exceptions in cases of "fraud or intentional misrepresentations." The elements of a fraud claim under Arkansas law are "(1) a false representation of material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance." Roach v. Concord Boat Corp., 317 Ark. 474, 476, 880 S.W.2d 305, 306 (1994). Although a misrepresentation is generally required for a fraud claim to lie, a duty to speak may arise "where one person is in a position to have or to exercise influence over another who reposes confidence in him whether a fiduciary

relationship in the strict sense of the term exists between them or not." Camp v. First Fed'l Sav. & Loan, 12 Ark.App. 150, 155, 671 S.W.2d 213, 218 (1984) (quoting Hanson Motor Co. v. Young, 223 Ark. 191, 265 S.W.2d 501 (1954)).

Fed. R. Civ. P. 9(b) requires that fraud be pled with particularity. The purpose of the Rule is to provide the accused party with fair notice so as to allow the defendant "to prepare an informed pleading responsive to the specific allegations of fraud." See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n., 176 F.3d 315, 322 (6th Cir. 1999). Rule 9(b) requires a plaintiff, "at a minimum, to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." Coffey v. Foamex, L.P., 2 F.3d 157, 161-62 (6th Cir. 1993).

IV. Resolution

A. Indemnification claim

In its Order denying Friday Eldredge's motion to dismiss Towers Perrin's claims against it, the Court noted that Towers Perrin alleged that "it acted at all times" at the direction of Friday Eldredge. The Court declined to dismiss the indemnification claim because it was not apparent from the complaint that Towers Perrin would be unable to prove any facts in support of its claims. Towers Perrin alleges that discovery has borne out its allegation that it was, at most, merely passively negligent because it acted at the direction of Mr. Hurst, so that Friday Eldredge is liable to it for indemnification. Towers Perrin alleges that Mr. Hurst went beyond providing legal counsel to Dillard's in

connection with the Plan termination and "assumed the duty of supervising Towers Perrin's actuarial and administrative work and of acting as the liaison between Towers Perrin and Dillard's."

Friday Eldredge counters that now that discovery is complete, the record is clear that no "special relationship" existed between it and Towers Perrin and that Towers Perrin was more than "passively negligent" in failing to meet its obligations to Dillard's. Friday Eldredge contends that there is no basis in the facts or in the law for holding it liable to Dillard's in any respect or for holding it primarily liable for the damages Dillard's seeks to recover from Towers Perrin.

The evidence of record demonstrates that there is no sort of special relationship or express or implied contractual agreement between Towers Perrin and Friday Eldredge that would give rise to a right of indemnification on the part of Towers Perrin. Rather, Towers Perrin's agreement for the provision of services was with Dillard's, not with Friday Eldredge. Friday Eldredge's dealings with Towers Perrin were solely in its capacity as outside counsel for Dillard's in connection with the Plan termination.

Moreover, the evidence does not show that Mr. Hurst supervised Tower Perrin's provision of the various administrative and actuarial services it was retained to perform so as to give rise to a right to indemnification. Specifically, the evidence does not support a finding that Mr. Hurst directed or supervised Towers Perrin's performance of services such as the collection of participant data, data cleanup, the calculation of benefits, and the actual mailing of election forms and distribution of payments. Thus, to the extent Towers

12

Perrin may have breached its contractual obligations to Dillard's with respect to the provision of these services or negligently performed such services, the record does not permit a finding that Friday Eldredge is primarily liable to Dillard's for any resulting damages.

Insofar as Mr. Hurst provided direction to Towers Perrin on various matters pertaining to the Plan termination and acted as the liaison between Dillard's and Towers Perrin, any misconduct he may have committed or improper direction he may have given while acting in these roles cannot give rise to a claim for indemnification. If it is determined that Mr. Hurst misled Towers Perrin to take some action, or omit to do some act, then Mr. Hurst's wrongdoing must be imputed to Dillard's for purposes of ascertaining Towers Perrin's liability, so that Towers Perrin cannot be held liable to Dillard's for any resulting damages. Thus, if the Plan Amendment that Mr. Hurst drafted in his capacity as Dillard's counsel and that was supplied to Towers Perrin was defective due to his incompetence, then Towers Perrin cannot be held liable to Dillard's for any damages resulting from Towers Perrin's reliance on the defective Amendment. Similarly, if Mr. Hurst failed to relay information between Towers Perrin and Dillard's, he did so while acting on Dillard's behalf and Towers Perrin cannot be held liable to Dillard's for damages resulting from its representative's omissions.

In short, the relationship between Friday Eldredge and Towers Perrin is not one that could give rise to a right to indemnity on Towers Perrin's part with respect to the underlying claims asserted by Dillard's against Towers Perrin. Because Friday Eldredge

13

was acting on behalf of Dillard's as its counsel in connection with the Plan termination, any misrepresentations that Mr. Hurst made, or any omissions that he committed, must be imputed to Dillard's for purposes of assessing Towers Perrin's liability, if any, to Dillard's on the third-party claims. Towers Perrin can present any evidence it may have that Mr. Hurst engaged in misconduct in connection with the Plan termination in order to defend itself against those claims. If the evidence shows that Mr. Hurst is "the true cause of Dillard's injury" as Towers Perrin alleges, then Towers Perrin cannot be held liable to Dillard's in the first instance and no right of indemnification arises.

Assuming, *arguendo*, Towers Perrin had a special relationship with Friday Eldredge that could give rise to a claim for indemnification, Towers Perrin cannot pursue a claim for indemnification based on allegations that Mr. Hurst committed negligence, fraud and legal malpractice by making misrepresentations directly to Towers Perrin and by failing to make certain disclosures to Towers Perrin. Arkansas does not recognize a cause of action for negligent misrepresentation. See South County, Inc. v. First Western Loan Co., 315 Ark. 722, 725-26, 871 S.W.2d 325 (1994). Moreover, because privity is lacking between Towers Perrin and Friday Eldredge, Towers Perrin cannot establish a claim of legal malpractice against Mr. Hurst unless it can prove that Mr. Hurst committed fraud. Towers Perrin cannot pursue its fraud claims, however, because it did not allege in its fourth-party complaint that Friday Eldredge committed fraud against it so as to satisfy the requirements of Rule 9(b). In any event, for the reasons explained below, Towers Perrin has not shown the existence of a genuine issue of material fact on its fraud claims.

14

Towers Perrin claims that Mr. Hurst committed fraud by (1) approving Towers Perrin's delayed distribution of lump sum payments to Plan participants against Dillard's wishes, thereby misrepresenting Dillard's position and inducing Towers Perrin to delay distributions, and (2) misrepresenting the validity of the November 1, 1998, Plan Amendment. Towers Perrin's allegations fail to satisfy the first element of a fraud claim. Mr. Hurst's alleged approval of delayed distributions, even if such approval went against Dillard's wishes, cannot reasonably be construed as a false representation of material fact. Towers Perrin does not allege that Mr. Hurst made any affirmative representations that Dillard's approved the delayed distribution, and Mr. Hurst's alleged silence in the face of the delay cannot be construed as an affirmative representation of Dillard's approval. Nor does this case present the type of special circumstances where a failure to speak could reasonably be construed as the equivalent of a fraudulent concealment. See Camp, 12 Ark.App. 216, 671 S.W.2d 216. Mr. Hurst's purported failure to express any concerns to Towers Perrin regarding the validity of the 1998 Plan Amendment likewise cannot reasonably be construed as a false representation of material fact because first, there is no allegation that Mr. Hurst made any affirmative representations regarding the validity of the Plan Amendment, and second, whether or not the Plan Amendment is valid is an unresolved legal issue rather than a matter of fact. For these reasons, Towers Perrin cannot establish that Friday Eldredge committed fraud against it.

B. Contribution claim

In support of its contribution claim, Towers Perrin states that for the reasons set

forth in connection with its indemnification claim, "there is an issue of fact whether Friday [Eldredge] was a joint tortfeasor that should be held accountable for whatever portion of Dillard's alleged damages that it caused."  For the same reasons Towers Perrin has no right of indemnity against Friday Eldredge, there can be no right of contribution. Given Mr. Hurst's role as Dillard's counsel, his acts and omissions must be imputed to Dillard's for purposes of determining Towers Perrin's liability, and Towers Perrin cannot be held jointly and severally liable with Friday Eldredge for any injury to Dillard's.

V.  Conclusion

Friday Eldredge's motion for summary judgment (doc. no. 246) is **GRANTED.** The motion in limine and motion to sever claims filed by Friday Eldredge (docs. no. 306, 320) are **DENIED** as moot.  Friday Eldredge is **DISMISSED** as a party to this lawsuit.

**IT IS SO ORDERED.**


Date: 10/11/07                                                      S/ Sandra S. Beckwith
                                                                    Sandra S. Beckwith, Chief Judge
                                                                    United States District Court