# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| Cheryl Clevenger, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:02-cv-558 |
| | ) | |
| Dillard's Department Stores, | ) | |
| Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court upon the Motion for Judgment on Partial Findings filed by Third-Party Defendant Towers, Perrin, Forster & Crosby, Inc. ("Towers Perrin"). Doc. no. 343.  Third-Party Plaintiff Dillard's Department Stores, Inc. ("Dillard's") opposes the motion.  Doc. no. 352.  This matter is also before the Court upon Dillard's Motion to Strike Portions of Towers Perrin's Reply or, in the Alternative, to File a Sur-Reply Memorandum to address issues raised by Towers Perrin for the first time in its reply brief.  Doc. no. 354.

## I.  Introduction

This case proceeded to trial before the Court on Dillard's third-party claims against Towers Perrin.  After Dillard's had rested its case, Towers Perrin filed its Motion for Judgment on Partial Findings.  Towers Perrin contends that Dillard's is not entitled to

1

judgment on any of its claims.

Towers Perrin argues that Dillard's is not entitled to indemnification because the evidence shows that it was an active participant in the delay of the lump sum distributions under the Mercantile Stores Pension Plan (the "Plan") beyond January 30, 1999.  Towers Perrin alleges that Dillard's cannot maintain its breach of contract action because under the plain language of the parties' purported contract, Towers Perrin did not warrant that it would distribute all lump sum payments by a date certain of January 30, 1999; the evidence is unrebutted that "other issues" arose that delayed the distribution and which were communicated to Dillard's, and Dillard's assertion that its Treasurer John Hawkins, who was not called to testify live, was verbally insisting on full performance by January 30, 1999, is not credible in light of the pattern of communications between Towers Perrin and Dillard's; and Dillard's has indisputably waived any alleged right to enforce the purported contract terms it now invokes.  Towers Perrin argues that Dillard's claim for negligence likewise fails because Towers Perrin did not assume a duty to pay lump sums by January 30, 1999.

Towers Perrin contends that Dillard's professional malpractice claim must fail because the expert Dillard's retained to testify as to Towers Perrin's alleged deviation from the standard of care for actuarial consulting firms, James Colburn, actually opined that Towers Perrin committed legal malpractice when in fact Towers Perrin was not

retained to provide legal counsel.[1]  Towers Perrin alleges that Colburn's opinion that it committed what amounts to legal malpractice is meritless for the additional reason that Dillard's Officer Paul Schroeder conceded on cross-examination that it was proper for Towers Perrin to rely on the terms of the Plan Amendment and Dillard's decided on its own not to change the interest rate for payments made after January 30, 1999.  Towers Perrin further alleges that Colburn's second theory - that Towers Perrin deviated from the standard of care for actuarial firms by allegedly failing to warn Dillard's that there would be a delay in lump sum distributions - has no merit because Towers Perrin provided numerous such warnings.  Towers Perrin contends that the professional malpractice claim must also fail because its alleged malpractice did not cause Dillard's to suffer damages, and instead any alleged damages flowed from Dillard's and Dillard's outside counsel Joseph Hurst's decision to purportedly fix the annuity starting date in the Plan Amendment and from Dillard's acquiescence to distribution of lump sums in the 1999 Plan Year.

Towers Perrin claims that Dillard's has not established its fraud and negligent misrepresentation claims under Ohio law because Towers Perrin unmistakably informed Dillard's that all payments to Plan beneficiaries would not be completed by January 30, 1999, and could not be completed by that date under any circumstances.  Towers Perrin

---

[1]Towers Perrin is referring to Colburn's opinion that it allegedly supported a "stretch" interpretation of the Plan Amendment establishing the January 23, 1999, annuity starting date without disclosing the risk that such interpretation might not survive a judicial or regulatory challenge.

also argues that Dillard's fraud claim must fail because it is predicated on misrepresentations of future actions regarding the timing of lump sum distributions. Towers Perrin further alleges that there is no evidence that Dillard's relied on Towers Perrin's alleged misrepresentation that all lump sum distributions would be made by January 30, 1999, in choosing to terminate the Plan. Finally, Towers Perrin contends that its alleged misrepresentations did not result in any damages to Dillard's.

Towers Perrin alleges that Dillard's claims must all fail for the additional reason that its damages are unduly speculative. First, Towers Perrin alleges that Dillard's has not proven that the alleged delay in distributions caused any damages because Dillard's has not set forth any evidence as to how many payments could reasonably have been distributed by January 30, 1999. Second, Towers Perrin alleges that Dillard's has not shown what portion of the Settlement was attributable to Dillard's exposure on Counts V and VIII, as opposed to the other counts in the Class Action Complaint. Third, Towers Perrin claims that any damages Dillard's might be able to recover must be offset by the amount of money that Dillard's earned on the funds before it paid them to the Class and by Dillard's failure to account for the favorable tax treatment on the payment of the Settlement funds through the Plan, which rendered the payment tax deductible for Dillard's.

Towers Perrin argues that all of Dillard's claims must also fail because there was no underlying liability in the Class Action. Towers Perrin argues that the November 1, 1998, Plan Amendment properly fixed the annuity starting date as January 23, 1999,

4

regardless of the date of benefit payment, so that the lump sum distributions were calculated at the correct interest rate.  Towers Perrin moves the Court to reconsider its determination to the contrary that it made in its Order dated October 2, 2007.  See doc. no. 330.

In its reply brief, Towers Perrin presents additional extensive arguments in support of its theory that Dillard's was actively negligent because Mr. Hurst devised the administrative delay scheme that was purportedly used to justify the November 1998 Plan amendment which fixed the January 23, 1999, annuity starting date and dictated use of the 1998 Plan year interest rate for payments made after that date.  Towers Perrin also argues that Mr. Hurst failed to amend the Plan properly and that his actions constitute a superseding cause of any injury to Dillard's because the faulty execution of the amendment rendered it invalid.  Dillard's moves the Court to strike these particular arguments or to consider the sur-reply it seeks leave to file in response to the arguments.

## II.  Standard of Review

Fed. R. Civ. P. 52(c), "Judgment on Partial Findings," provides as follows:

> If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule.

Rule 52(c) vests the court with discretion to grant the motion at the end of the

plaintiff's proofs or to decline to enter judgment until the end of the case. <u>Progressive Architects/Engineers/Planners, Inc. v. Security Ins. Co. of Hartford</u>, 1996 WL 724364, *4 (6th Cir. 1996) (unpublished decision).

III.   <u>Analysis</u>

A.   <u>Request for Judgment on Partial Findings</u>

The Court exercises its discretion to deny Towers Perrin's request for judgment on partial findings.  The testimony and exhibits presented during Dillard's case-in-chief demonstrate that there are a number of factual issues underlying resolution of the third-party claims.  Those factual matters must be fully developed on the record before the Court can render judgment on any of the third-party claims.  Accordingly, judgment pursuant to Rule 52(c) is not warranted.

B.   <u>Request to Reconsider Legal Determination</u>

Towers Perrin's request that the Court reconsider its determination that the applicable interest rate for the lump sum distributions was the rate in effect on the date of distribution, as opposed to the rate in effect on the purported annuity starting date of January 23, 1999, set forth in the Plan, is not properly granted absent "(1) a manifest error of law; (2) newly discovered evidence which was not available previously to the parties; or (3) intervening authority."  <u>See</u> <u>Meekison v. Ohio Dept. of Rehabilitation and Correction</u>, 181 F.R.D. 571, 572 (S.D. Ohio 1998) (citing <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985)).  For the reasons explained below, Towers Perrin has not

come forward with any intervening authority on this issue and has not shown that the Court committed a manifest error of law in ruling as it did.

In support of its argument that the Court erred in finding that the correct interest rate to be applied to the lump sum payments was the rate in effect on the date of distribution, Towers Perrin presents three arguments. First, Towers Perrin argues that the Pension Benefit Guaranty Corporation ("PBGC") regulation that provided the method for distributing lump sum payments upon termination of a plan, 29 C.F.R. § 4041.28(c)(2) (1999), expressly rejected the position that the annuity starting date must always be the same as the date of distribution. Section 4041.28(c)(2) stated that for lump sum calculations, "In the absence of evidence establishing that another date is the 'annuity starting date' under the [Internal Revenue] Code, the distribution date is the 'annuity starting date' for purposes of - - (i) Calculating the present value of plan benefits that may be provided in a form other than by purchase of an irrevocable commitment from an insurer (e.g., in selecting the interest rate(s) to be used to value a lump sum distribution) . . ." The Court previously found that this regulation did not support use of an annuity starting date other than the date of distribution in this case because Towers Perrin had not pointed to an Internal Revenue Code provision that would apply to establish the annuity starting date specified in the Plan rather than the date of distribution as the annuity starting date. See doc. no. 330, p. 42, n. 6. Towers Perrin now contends that there was an I.R.C. provision in effect at the time that served as evidence establishing January 23, 1999, as the annuity starting date to be used in selecting the applicable interest rate for

7

valuing the lump sum distributions.  Towers Perrin refers the Court to 26 U.S.C. §
417(f)(2)(A), which defined the "annuity starting date" for a benefit not payable in the
form of an annuity as "the first day on which all events have occurred which entitle the
participant to such benefit," thereby keying the annuity starting date to the date under the
Plan when all events required for distribution had occurred rather than to the date of
distribution.  Towers Perrin contends that the January 23, 1999, annuity starting date set
forth in the Plan Amendment satisfied this definition because it occurred after the
mandatory PBGC 60-day waiting period for distribution of benefits as part of a Plan
termination.  Towers Perrin apparently construes the running of the 60-day period as the
final event entitling Plan participants to a lump sum distribution.

Towers Perrin's argument that § 4041.28(c)(2) and § 417(f)(2)(A) dictated use of
an interest rate other than the rate in effect on the date of distribution of the lump sum
payments in this case is not well-taken. Given § 4041.28(c)(2)'s specific directive
concerning use of the distribution date as the annuity starting date for purposes of
selecting the interest rate and calculating the present value of lump sum benefits, §
417(f)(2)(A)'s general and rather nebulous definition of "annuity starting date" is not
persuasive evidence that the date that marks the conclusion of the mandatory 60-day
PBGC waiting period, as opposed to the date of distribution, is the proper annuity starting
date to be used for valuing lump sum benefits.

Towers Perrin points to I.R.C. provisions governing the distribution of joint and

survivor annuity election forms as additional evidence under the Code establishing that the annuity starting date for lump sum distributions can differ from the date of distribution.  Towers Perrin notes that 26 U.S.C. § 417(a)(3) states that a plan must "provide to each participant within a reasonable period of time before the annuity starting date (and consistent with such regulations as the Secretary may prescribe), a written explanation of [the joint and survivor annuity]," the participant's right to make an election to waive this form of benefit, and the right to revoke an election.  Towers Perrin then notes that § 417(a)(7) expressly permits the provision of the written explanation after the annuity starting date, so long as the period for electing the qualified joint and survivor form of benefit does not end before the 30th day after the date on which such explanation is provided.   While these provisions suggest that there are situations where lump sum benefits can be distributed after the annuity starting date, the provisions are not evidence that a date other than the date of distribution is the annuity starting date in this case for purposes of selecting the interest rate to be used for calculating the present value of the lump sum benefits.

Towers Perrin cites a third provision, 26 C.F.R. § 1.401(a)-20 Q & A-10(b)(2) (1999), for the proposition that the annuity starting date is not necessarily the date on which payment is made.  Subsection 10(b) provided as follows:

> (b) Annuity starting date--(1) General rule. For purposes of sections 401(a)(11), 411(a)(11) and 417, the annuity starting date is the first day of the first period for which an amount is paid as an annuity or any other form. (2) Annuity payments. The annuity starting date is the first date for which

an amount is paid, not the actual date of payment. Thus, if participant A is to receive annuity payments as of the first day of the first month after retirement but does not receive any payments until three months later, the annuity starting date is the first day of the first month. For example, if an annuity is to commence on January 1, January 1 is the annuity starting date even though the payment for January is not actually made until a later date. In the case of a deferred annuity, the annuity starting date is the date for which the annuity payments are to commence, not the date that the deferred annuity is elected or the date the deferred annuity contract is distributed.

When quoting § 10(b)(2), Towers Perrin omits the words "Annuity payments" which appear at the start of the provision and which clearly signal that the provision applies specifically to annuity payments and not to lump sum distributions.  As subsection (b)(2) expressly applies to annuity payments, the regulation is not evidence that a date other than the date of distribution should have been used as the annuity starting date for purposes of selecting the interest rate to be applied to the lump sum distributions in the present case.

In view of the above regulatory provisions, Towers Perrin contends that the Court's reliance on PBGC v. Wilson N. Jones Memorial Hospital, 374 F.3d 362 (5th Cir. 2004), was misplaced because the case implicated an earlier, and materially different, statutory and regulatory scheme.  Towers Perrin asserts that both § 4041.28(c)(2) and I.R.C. § 417(a)(7) were not effective until after the events in Wilson Jones.  For the reasons stated above, consideration of these provisions does not lead the Court to conclude that its reliance on Wilson Jones was misplaced and that it erred in determining the interest rate applicable to the lump sum distributions in this case.

Finally, Towers Perrin repeats its argument previously presented to the Court that the fact that distributions were not made until after the annuity starting date set by the Plan is immaterial because the Treasury Department regulations, 26 C.F.R. § 1.401(a)-20, Q & A-10(b)(3) (1999), provided that the annuity starting date need not be the actual payment date if payments are "reasonably delayed" to complete benefit calculations, which is what purportedly occurred in this case.  Towers Perrin presents no new authorities or arguments in support of its position that the administrative delay regulation applies to modify the annuity starting date and the corresponding interest rate for the lump sum distributions in this case.  Reconsideration of the Court's prior ruling on this ground is not warranted.

C.  Motion to Strike or, in the Alternative, to File Sur-Reply

In light of the Court's decision that neither judgment on partial findings nor reconsideration of its prior legal determination as to the correct interest rate to be applied to the lump sum payments is warranted, Dillard's motion to strike arguments of Towers Perrin or, in the alternative, for leave to file a sur-reply will be denied as moot.

11

IV.  <u>Conclusion</u>

In accordance with the foregoing, Towers Perrin's Motion for Judgment on Partial Findings (doc. no. 343) and Dillard's Motion to Strike or, in the Alternative, to File Sur-Reply (doc. no. 354) are **DENIED.**

**IT IS SO ORDERED.**

Date:  __11/30/07__                                    <u>S/ Sandra S. Beckwith                </u>
                                                       Sandra S. Beckwith, Chief Judge
                                                          United States District Court